IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Virginia D. White, ) | |
| ) | Civil Action No. 6:07-3844-TLW-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff initially filed applications for disability insurance benefits (DIB) on February 28, 2003, alleging disability commencing October 25, 2002, due to lateral epicondylitis (tendinitis, commonly known as "tennis elbow"). At a hearing held on July 28, 2004, the plaintiff amended her claim to request a closed period of disability from October 25, 2001, to March 4, 2004. In a decision dated September 13, 2004, an

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

administrative law judge (ALJ) granted the plaintiff benefits for the closed period of disability.

The plaintiff's current applications for DIB and supplemental security income (SSI) were filed on January 28, 2005, alleging a disability onset date of March 5, 2004. The applications were denied initially and on reconsideration by the Social Security Administration. On December 20, 2005, the plaintiff requested a hearing. The administrative law judge, before whom the plaintiff, her attorney, a witness and a vocational expert appeared on November 7, 2006, considered the case *de novo*, and on March 28, 2007, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on November 2, 2007. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)     The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> (2)     The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (3)     The claimant's right upper extremity pain, status post right shoulder and elbow surgery, and degenerative disc disease of the cervical spine are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).
>
> (4)     These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (5)     The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

(6) The claimant has the following residual functional capacity: light work in jobs that do not require climbing of ladders, ropes or scaffolds, or work around hazardous machinery or at unprotected heights, with the use of the right arm and hand restricted to use as a helper to the other hand.

(7) The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

(8) The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

(9) The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

(10) The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

(11) The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

(12) Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.20 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as parking lot attendant, tobacco sampler, storage clerk.

(13) The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and

who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  20 C.F.R. §404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary.  20 C.F.R. §404.1503(a).  *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82–62.  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. §423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the

national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff was 47 years old on the date of the ALJ's decision. She completed the tenth grade and has past relevant work as an inspector/hand packaging. Her amended alleged onset of disability date was March 5, 2004, the end of her previously-granted closed period of disability, this time based on neck and shoulder pain.

***James Spearman, M.D.***

The record reveals that on March 19, 2004, Dr. James Spearman, who had treated the plaintiff for her "tennis elbow" in connection with a worker's compensation claim, performed nerve release surgery on the plaintiff's right arm (Tr. 151). The following week, the plaintiff reported that she was "doing well," and had good range of motion in her right hand and wrist. She was instructed only to avoid "heavy lifting or work" with her right arm. In April, the plaintiff "voice[d] concern over the discontinuance of her long term disability" (Tr. 277). She had full range of motion in her right shoulder, with only "slight" discomfort with extreme flexion and abduction, no rotator cuff weakness and negative impingement. Examination of her cervical spine showed "no significant" tenderness or spasm (Tr. 278). On April 22, 2004, Dr. Spearman noted that the plaintiff was released to modified duty with no heavy lifting and limited use of her right arm (Tr. 276). On May 10, 2004, less than two months after undergoing surgery, the plaintiff was released to regular duty, with no limitations and "no reason for any impairment rating" (Tr. 272).

The plaintiff did not seek further treatment from Dr. Spearman until July 14, 2005, more than 14 months later, when she presented with complaints of bilateral shoulder pain. The plaintiff indicated that she had experienced shoulder pain for more than three years, but Dr. Spearman noted that his records reflected that she had voiced such complaints on only "one or two occasions." Examination revealed crepitance with range of motion and decreased strength in both shoulders, as well as tenderness to palpation. An MRI of the plaintiff's right shoulder showed tendinitis, but no evidence of a tear. An MRI of her left shoulder showed a possible labrum tear, but no evidence of a rotator cuff tear. Dr. Spearman administered a subacromial injection into the plaintiff's right shoulder and instructed her to work on strengthening exercises (Tr. 271). At that time, he limited the plaintiff to lifting no more than five pounds with either upper extremity and no overhead work (Tr. 269).

Dr. Gerald J. Shealy, a hand surgeon, evaluated the plaintiff for both shoulders and elbow on August 16, 2005. He administered an injection into the plaintiff's left shoulder. The plaintiff returned on September 6, 2005, stating that the injection did not improve her symptoms. No additional treatment was provided (Tr. 208-209).

On August 4, 2005, Dr. Spearman indicated that the plaintiff would be limited to lifting five pounds with both the right and left upper extremities, and could perform no overhead work (Tr. 266). On September 12, 2005, Dr. Spearman noted that the plaintiff's condition had not responded to injections or physical therapy and indicated that an MRI showed a torn labrum in the plaintiff's left shoulder. He scheduled the plaintiff for arthroscopic surgery, which was performed on September 25, 2005 (Tr. 268). In October, examination showed that her shoulder had healed well, with no swelling and only "mild" pain on range of motion. Dr. Spearman diagnosed a rotator cuff tear in the plaintiff's right shoulder and recommended surgery (Tr. 263).

X-rays of the plaintiff's cervical spine taken in November 2005 showed disc disease at C5-6, with spurring and loss of disc space. Dr. Spearman prescribed medication, including a Medrol Dosepak (a steroid) (Tr. 260).

On December 29, 2005, the plaintiff underwent a consultative examination performed by Dr. Don O. Stovall, Jr., a colleague of Dr. Spearman at Low Country Orthopedics and Sports Medicine. Upon examination, Dr. Stovall noted no tenderness in the plaintiff's midline or paraspinal muscles, and only "mild" tenderness across the proximal trapezius. She also exhibited "good" range of motion in her neck, and her thoracolumbar examination was normal in all respects. An MRI of the plaintiff's cervical spine showed degenerative changes at C4-5 and C5-6, with "some" disc bulging but "no evidence of significant herniated disc, spinal canal stenosis or nerve root impingement" (Tr. 257-58; *see also* Tr. 248).

The plaintiff underwent arthroscopic surgery on her right shoulder in January 2006. In February, Dr. Spearman noted that the plaintiff had only "mild" tenderness in her right shoulder, and full range of motion in her right elbow and wrist. She had no tenderness in her left shoulders, full range of motion in the shoulder, elbow and wrist, and no pain (Tr. 256). There are no further treatment records from Dr. Spearman in the record.

### *Fetter Cross Health Center*

The plaintiff was treated at the Fetter Cross Health Center for a variety of routine complaints, including occasional complaints of neck and shoulder pain, from September 2003 through February 2006 (Tr. 306-343).

Diagnostic studies of the plaintiff's right shoulder taken in December 2004 were "unremarkable," with no evidence of acute fracture, subluxation, dislocation or degenerative changes (Tr. 166, 176). Diagnostic studies of her left shoulder taken in January 2005 were equally "unremarkable" (Tr. 165, 175). An MRI of her left shoulder taken in January and February 2005 revealed a tendon tear, bursitis, labral tear and cystic degenerative changes (Tr. 171, 173-174). An MRI of her right shoulder taken in March 2005 showed some tendinosis without evidence of tear, possible bursitis and some degenerative changes (Tr. 167, 169).

### *Kerri A. Kolehma, M.D.*

On July 11, 2005, Dr. Kolehma performed a consultative orthopedic examination in connection with the plaintiff's application for disability benefits. Examination revealed normal range of motion in all areas, with the exception of slightly reduced rotation in the cervical spine. Dr. Kolehma concluded that the plaintiff's only limitation would be with continued repetitive movements with her right arm (Tr. 195-98).

*State Agency*

On July 15, 2005, Dr. George T. Keller, III, a State agency medical consultant, completed a "Physical Residual Functional Capacity Assessment" form. Based on a review of the medical evidence of record, Dr. Keller concluded that the plaintiff retained the residual functional capacity to occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry up to 10 pounds; stand and/or walk for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday. He also opined that the plaintiff could frequently reach in all directions, including overhead (Tr. 199-206).

On December 8, 2005, Dr. Robert Mathews, also a State agency medical consultant, completed a second "Physical Residual Functional Capacity Assessment" form. Based on his independent review of the medical evidence of record, Dr. Mathews concluded that the plaintiff's residual functional capacity was similar to that expressed by Dr. Keller (Tr. 224-31).

*Administrative Hearing Testimony*

At the hearing, the plaintiff testified that her condition "got worse" since she had stipulated to a closed period of disability ending on March 4, 2004, in a previous administrative hearing (Tr. 36). She stated that she had undergone surgery on both shoulders since that time (Tr. 37-38). The plaintiff testified that her prescribed medication caused her to sleep, and that she also experienced dizziness and was precluded from operating machinery or driving an automobile (Tr. 39, 43).

Arthur Schmidt, a vocational expert, also testified at the hearing (Tr. 48-51). Mr. Schmidt testified that the plaintiff's past relevant work as an inspector/hand packager had been unskilled and of light exertion (Tr. 49). When the ALJ posed a hypothetical question based on an individual of the plaintiff's age, education, and vocational history, who could perform work at the light level of exertion, who could use one arm frequently, but not

9

constantly, as a helping hand or arm, and the other frequently but not constantly, Mr. Schmidt testified that such a person could perform the jobs of parking lot attendant, tobacco sampler, or storage facility clerk (Tr. 49). He further testified that the job of parking lot attendant would entail "just to sit or stand and make change and collect fees;" that the job of tobacco sampler would entail taking chemicals from an eyedropper, putting a couple of drops on a tobacco leaf, and then checking boxes on a form; and that the job of storage facility clerk would involved just checking people in and assigning them a storage unit (Tr. 50). In response to a question from the ALJ, Mr. Schmidt testified that any deviation from the *Dictionary of Occupational Titles* (*DOT*) was based on his own experience (Tr. 49-50).

## ANALYSIS

As discussed above, the plaintiff was previously granted benefits for a closed period of disability from October 25, 2001, to March 4, 2004. In the instant action, the plaintiff alleges disability since March 5, 2004, due to neck and shoulder pain. The ALJ found that the plaintiff retained the residual functional capacity ("RFC") to perform light work that does not require climbing ladders, ropes, or scaffolds; work around hazardous machinery or at unprotected heights; and with the use of the right arm and restricted to use as a helper to the other hand (Tr. 20). The plaintiff argues that the ALJ erred by (1) failing to give proper weight to the opinion of her treating physician; (2) failing to obtain a reasonable explanation from the vocational expert to resolve the conflict between the expert's testimony and the *Dictionary of Occupational Titles* ("DOT"); and (3) failing to properly assess her credibility.

*Treating Physician*

The plaintiff argues that the ALJ failed to properly consider the opinion of Dr. Spearman, who was her treating orthopaedic specialist and who performed surgery on her

shoulder. The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §416.927(d)(2) (2006); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The regulations provide that even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying five factors: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. §404.1527(d)(2)-(5). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, *5. As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest

11

> weight and should be adopted, even if it does not meet the test
> for controlling weight.

*Id.* 1996 WL 374188, *4.

On July 14, 2005, and August 4, 2005, Dr. Spearman indicated that the plaintiff would be limited to lifting five pounds with both the right and left upper extremities and could perform no overhead work (Tr. 266, 269). The plaintiff underwent a vocational evaluation by Jean R. Hutchinson, M.Ed., a vocational expert, on September 26, 2006 (Tr. 140-46). In the evaluation, Ms. Hutchinson indicated she had reviewed records from Dr. Spearman, including an office note and return to work recommendation dated August 16, 2006, in which Dr. Spearman indicated that the plaintiff "has not had significant improvement over the past few months with regard to her shoulders and has permanent restrictions of no overhead work and no heavy lifting over five pounds" (Tr. 145). The ALJ did not mention this evidence in his decision.

The ALJ failed to consider Dr. Spearman's opinions from July and August 2005 that the plaintiff would be limited to lifting five pounds with both the right and left upper extremities and could perform no overhead work (Tr. 266). The ALJ also did not evaluate Dr. Spearman's opinion of the plaintiff's permanent restrictions as cited by Ms. Hutchinson in her vocational evaluation of the plaintiff. While Ms. Hutchinson's evaluation was in the record before the ALJ, the actual office record from Dr. Spearman as cited by Ms. Hutchinson was not in the record. Accordingly, the defendant argues that the ALJ did not need to consider it. However, the ALJ does have a duty to make sure the record is adequately developed to make an informed decision. The Code of Federal Regulations provides the requirements for obtaining supplemental information from treating physicians:

> (e)    Recontacting medical sources. When the evidence we
> receive from your treating physician or psychologist or other
> medical source is inadequate for us to determine whether you
> are disabled, we will need additional information to reach a
> determination or a decision. To obtain the information, we will
> take the following actions.

12

> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.
>
> (2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

20 C.F.R. § 404.1512(e). Here, there was evidence before the ALJ that the plaintiff's treating physician opined the plaintiff was permanently restricted from lifting more than five pounds and doing overhead work. Other evidence in the record shows that Dr. Spearman had imposed such restrictions in the past. This evidence specifically contradicts the ALJ's finding that the plaintiff could lift up to 20 pounds occasionally and up to 10 pounds frequently with her left upper extremity (Tr. 17). The ALJ failed to mention these reports, much less give his reasons for rejecting them. Accordingly, upon remand, the ALJ should be instructed to contact Dr. Spearman in an effort to obtain the August 16, 2006, opinion cited by Ms. Hutchinson in her evaluation. The ALJ should be further instructed to evaluate the opinion of this treating physician in accordance with above-cited law. In addition, the ALJ should be instructed to consider the employability evaluation performed by Ms. Hutchinson.

***Vocational Expert Testimony***

The plaintiff also argues that the ALJ erred by failing to obtain an explanation from the vocational expert ("VE") for any conflict with the *Dictionary of Occupational Titles* ("DOT").

> Social Security Ruling 00-4p provides in pertinent part:
>
> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, *3.

In the hypothetical question to the VE at the hearing, the ALJ asked the VE to assume an individual limited to light work in which "one upper extremity can be used only as a helping hand or helping arm; the other upper extremity, no constant use of it, but can use it frequently; no hazardous environment such as unprotected heights, moving machinery, things of that nature" (Tr. 49). In response to the ALJ's question, the VE cited three unskilled, light occupations that the individual would still be able to perform despite these restrictions. After the VE cited the work a hypothetical individual with the aforementioned restrictions could perform, the ALJ then asked "And I assume your testimony's based on the DOT; and to the extent it's not totally consistent therewith, it's based on your experience as a vocational expert. Is that correct?" The VE replied "That's correct, sir" (Tr. 49-50).

As argued by the plaintiff, the vocational testimony did conflict with the DOT and companion material, in that the occupations cited by the VE all require frequent use of

14

the upper extremities for handling according to the DOT's companion publication, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") (pl. brief, ex. A).  Further, it is impossible to determine from the record what the opinion of the VE was regarding a conflict with the DOT and SCO.  As such, it is impossible for this court to review the VE's opinion appropriately.  Accordingly, upon remand, the ALJ should be instructed to further consider the vocational impact of the plaintiff's limitations on her ability to perform other work.  If vocational testimony indicates there are other jobs the plaintiff can perform, the VE should provide a clear answer to the question of whether a conflict exists with the DOT and, if there is a conflict, the VE should explain specifically what the conflict is and what basis he has for providing the testimony given.

***Credibility***

The plaintiff next argues that the ALJ failed to properly assess her credibility. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996).  A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4).  Furthermore, "a formalistic factor-by-factor

15

recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility."  *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).  Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record."  Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight."  SSR 96-7p, 1996 WL 374186, *4.

In addition to the objective medical evidence, the factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

> (1)  the individual's daily activities;
>
> (2)  the location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> (3)  factors that precipitate and aggravate the symptoms;
>
> (4)  the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> (5)  treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> (6)  any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7)  any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, *3.

The ALJ found as follows with regard to the plaintiff's credibility:

> [T]he undersigned has considered the claimant's testimony regarding her subjective allegations of disabling pain and other symptoms but finds her testimony less than fully credible

16

> because her allegations are excessive and not fully supported by the evidence of record.
> ***
> The undersigned finds that the limitations imposed more than adequately accommodate the claimant's musculoskeletal impairments and have taken into consideration the claimant's allegations of pain. In that regard the record documents that the claimant does not take any strong pain (narcotic) medication and statements from her physicians generally allude to no greater than moderate pain. . . .

(Tr. 17-18).

The defendant argues that the ALJ adequately supported his finding. The defendant notes that the plaintiff's credibility is undermined by the fact that she stipulated in July 2004, at the hearing on her original disability claim, that she was not disabled as of March 4, 2004 (Tr. 27). However, the defendant's post-hoc rationalization for the ALJ's credibility finding is inappropriate. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."). As argued by the plaintiff, the ALJ has failed to identify the evidence supporting his decision that her subjective allegations were "less than fully credible." Upon remand, the ALJ should be instructed to analyze the plaintiff's subjective complaints under the two-step process and in accordance with the above-cited law.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

December 8, 2008  s/William M. Catoe
Greenville, South Carolina  United States Magistrate Judge